FILED
2008 May-15 PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| Elizabeth R. Dill, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 07-G-0947-J |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Elizabeth R. Dill, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;

   (2)   whether she has a severe impairment;

  (3)  whether her impairment meets or equals one listed by the Secretary;

  (4)  whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

  In the instant case, the ALJ, Patrick R. Digby, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairments (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE
## SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

5

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff alleges she is disabled due to chronic pain and depression.  The treatment notes show the plaintiff sought treatment for pain from Dr. Harrison at least as early as September 9, 2002.   She was sent for an orthopedic evaluation by Dr. Smith on September 22, 2004, after complaints of increasing pain to Dr. Harrison.  Dr. Smith found fused disks at C6-7 with spondylolisthesis at T1 shown on x-ray scans.  [R 115]  Lumbar x-ray showed degenerative changes of the lumbar spine.  A prior CT scan showed degenerative changes throughout the lumbar spine.  [R 115]  X-ray of the left hip showed mild left hip arthrosis.  [R 115]  Dr. Smith's diagnostic impression was as follows:  "The patient has left hip mild arthrosis with lumbar spondylosis, lumbar facet disease with cervical spondylosis...."  [R 115-116]  The plaintiff was sent for an MRI of the cervical and lumbar spine.  [R 116]  Dr. Smith interpreted the MRI as showing lumbar facet disease at L4-5 and L5-S1.  [R 162]  The MRI showed loss of normal cervical lordosis with a previous fusion at C6-7 and mild degenerative changes at C5-C6.  [R 162]

The plaintiff was seen in Dr. Harrison's office, by either him or his nurse practitioner over 40 times between September 9, 2002, and March 30, 2006.[1]  The treatment notes show the plaintiff was prescribed 60 tablets of Lortab 7.5 and 30 tablets of Xanax 1 mg monthly from 2002 through March 30, 2006, by Dr. Harrison.  Dr. Harrison would not have prescribed narcotic pain medication monthly over a three and one-half year period if he did not believe the plaintiff was suffering from severe pain.

After the plaintiff's insurance stopped paying for Dr. Harrison's treatment, the plaintiff began seeing Dr. Long on April 20, 2006.  [R 181]  Dr. Long prescribed 15 tablets of Lortab 7.5 and Xanax 1 mg.  [R 181]  On June 2, 2006, July 5, 2006, and August 4, 2006, Dr. Long prescribed 60 tablets of Lortab 7.5 and 30 tablets of Xanax.  [R 178-180]

A treatment note from Dr. Beretta dated August 29, 2006, shows the plaintiff was found to have mild tenderness at C5-6-7 with radiation to the shoulder and decreased range of motion to the left.  [R 175]  In the lumbar spine Dr. Beretta found mild tenderness with extension.  [R 175]  He prescribed 60 tablets of Lortab 7.5 and performed an epidural steroid injection on September 6, 2006.

Dr. Smith, the plaintiff's treating orthopod, completed a Report of Disability for the Retirement Systems of Alabama.  [R 161]  Dr. Smith opined the plaintiff would be unable to do her previous job as a school bus driver due to her

---

[1] There are only 8 treatment notes actually in the record.  However, each treatment note lists prior visits, documenting 33 additional visits.

"cervical fusion at C6-7 with degenerative changes at adjacent levels lumbar spondylosis and hip [osteoarthritis]."  [R 161]  Dr. Smith opined the plaintiff would be unable to sustain "a job that requires prolonged sitting and free cervical [range of motion]."  [R 161]  Dr. Smith noted the plaintiff "has lumbar degenerative changes at L4-5 [and] L5-S1 [with] cervical spondylosis at C5-6...."  [R 162]

Therefore, the medical records show the plaintiff took on average two Lortab 7.5 tablets every day from September 9, 2002, through September 2006.  This narcotic pain medication was prescribed by three different doctors.  Dr. Smith's records confirm the presence of significant disc problems in both the cervical and lumbar spine.  Dr. Beretta prescribed an epidural steroid injection in an attempt to alleviate her pain.  The medical record shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

The ALJ found the plaintiff's condition met the Eleventh Circuit pain standard:  "[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms...."  [R 21]

The plaintiff testified that she was unable to work due to severe pain:

Q:   ....And what's keeping you from doing that job now?

A:   The pain.

Q:   The pain?

A:   Yes, sir. I have severe pain in – without my medication, I – it still hurts. I still have pain even with my medication.

Q:   And you take Lortab? That's your medication?

A:   Yes, sir.

Q:   Does it work?

A:   Yeah, but it don't stop the pain. I still have the pain. It don't just knock it out.

[R 198-199] The vocational expert testified that in his opinion, pain above the moderate level would preclude any work due to an inability to maintain attention, concentration and focus during an eight-hour day. [R 215]

The ALJ refused to credit the plaintiff's testimony that she suffered from severe pain that required her to lie down frequently during the day. The only reason articulated by the ALJ was the following:

> The claimant testified to very limited daily activities which included the need to lie down during the day. However, she failed to inform her treating or the consultative medical doctor of such need and neither doctor instructed her to lie down during the day. The claimant also failed to inform the consultative psychologist, Dr. Houston, of such need to lie down during the day. The Claimant, upon her visit with Dr. Blotcky, informed him that her daily activities included doing light housework, preparing simple meals, watching television, and "resting."

9

[R 22] This reasoning is not supported by substantial evidence. That the medical record does not contain a notation indicating the plaintiff informed her doctors of a need to lie down for a total of four to six hours during the day is not substantial evidence to negate such a need. Moreover, the plaintiff's actual testimony was that she had to lie down for short periods all throughout the day. She essentially testified that she constantly needed to change positions to alleviate her pain:

> Q: First of all, why do you need to lay [sic] down?
>
> A: Because, I just – it's – I can't sit.
>
> Q: Does it injure your back?
>
> A: Yes, sir.
>
> Q: And can you lie very long?
>
> A: Not very long at a time.
>
> Q: So, you're essentially all day long sitting, standing and walking?
>
> A: Yes, sir.

[R 203-204] Her inability to sit for long periods was confirmed by her treating orthopod, Dr. Smith. Under these circumstances, the absence of any notation in the medical records of a need to lie down during the day is not substantial evidence to support the conclusion the plaintiff was not telling the truth at the hearing. The medical records, as noted above, document a very long continuous treatment history of pain with narcotic pain medications and epidural steroid injections. A reasonable fact finder, considering the entirety of the

evidence, would not refuse to credit the plaintiff based solely on the absence of a notation in the treatment records about a need to lie down during the day to alleviate pain. Accordingly, the ALJ's articulated reason for refusing to credit the plaintiff's pain testimony is not supported by substantial evidence, and that testimony must be accepted as true.

At the hearing, the vocational expert testified the plaintiff would not be able to work if her pain were above the moderate level. [213] He also testified that the plaintiff would not be able to work if she had to lie down for four hours during the work-day on a routine basis. [R 215] Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 15 May 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.